Jack RIDGWAY and Linda Ridgway, Appellants,

v.

FORD MOTOR CO., Appellee.

No. 04–00–00637–CV.

Court of Appeals of Texas, San Antonio.

Jan. 31, 2002.

Rehearing Overruled May 9, 2002.

Rob Hughes, Jr., Tina Torres, Law Office of Peter Torres, Jr., San Antonio, for Appellant.

Kurt Kuhn, Brown McCarroll, L.L.P., Austin, for Appellee.

Sitting: ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice and KAREN ANGELINI, Justice.

Opinion by ALMA L. LÓPEZ, Justice.

This appeal of a summary judgment concerns whether the evidence is sufficient to raise a fact issue about a manufacturing defect alleged under theories of negligence and products liability. We affirm the trial court's judgment in part and reverse and remand the remainder of the case to the trial court for further proceedings.

FACTS

On July 17, 1997, Jack Ridgway suffered severe burns when his used 1995 Ford F–150 (the "truck") burst into flames while he was driving it. He received second degree burns on twenty percent of his body. Ridgway was the truck's third owner. The accident occurred less than a month after Ridgway purchased the truck. At the time of purchase, the vehicle had amassed 54,792 miles. The first owner modified the truck by installing a spotlight on the driver's side front door frame, but otherwise did not make any significant repairs to the vehicle and traded it in after approximately 7,000 miles. The second owner drove an additional 45,000 miles in the truck for two years before it was repossessed. During his two years of ownership, the second owner took the truck in for repairs at Red McCombs Ford ("Red McCombs") on four different occasions, three of which were for repairs to the truck's fuel system.

Following the accident, the Ridgways asserted claims for products liability, breach of warranty, violations of the Texas Deceptive Trade Practices Act, and negligence against both Red McCombs and Ford Motor Company ("Ford"). Red McCombs and Ford both responded to the Ridgways' claims with motions for summary judgment. In response to these motions, the Ridgways nonsuited Red McCombs.

The Ridgways' two remaining claims against Ford are for products liability and negligence due to a manufacturing defect. They claim that the fire was the result of an unspecified defect in the fuel system and/or the electrical system. Mr. Ridgway's account is supported by the affidavit of Bill Greenless, who conducted a visual inspection of the truck and concluded that, from his visual inspection, the fire originated in the engine block due to an electrical malfunction. Appellants also provided evidence from the truck's prior owners and the title history to the vehicle. Ford asserted that there was no evidence of a product defect or a safer design alternative. Ford further argued for summary judgment, claiming that there was insufficient circumstantial evidence. The trial court granted Ford's motion for summary judgment and dismissed the Ridgways' claims. The Ridgways appeal to this Court claiming that they have produced sufficient evidence to warrant a trial.

STANDARD OF REVIEW

Appellate review of a summary judgment is conducted de novo. See Coleman v. Cintas Sales Corp., 40 S.W.3d 544, 547 (Tex.App.-San Antonio 2001, no pet.). In Texas, a party may move for a traditional summary judgment and/or a no-evidence summary judgment. See TEX.R. CIV. P. 166a(c) & 166a(i). It is a well established practice in Texas that when a defendant moves for summary judgment, he must show as a matter of law that the plaintiff has no cause of action against him. See Citizens First Nat'l Bank v. Cinco Exploration, 540 S.W.2d 292, 294 (Tex. 1976). In a summary-judgment analysis, we must consider the evidence in a light most favorable to the non-movant, and in-

dulge every reasonable inference and doubt in the non-movant's favor. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Valores Corporativos S.A. de C.V. v. McLane Co.*, 945 S.W.2d 160, 162 (Tex.App.-San Antonio 1997, writ denied).

■ To be entitled to a traditional summary judgment, a defendant must disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each element of an affirmative defense. *See Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex.App.-Dallas 2000, no pet.). A traditional summary judgment will be upheld only if the record shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Valores*, 945 S.W.2d at 162. Provided that the defendant establishes a right to a traditional summary judgment, the burden then shifts to the plaintiff to provide evidence that creates a genuine issue of material fact, nullifying the defendant's claim. *See id.* at 832.

■ A no-evidence summary judgment is best described as a pre-trial directed verdict. *See Roth v. FFP Operating Partners, L.P.*, 994 S.W.2d 190, 195 (Tex.App.-Amarillo 1999, pet. denied). In a no-evidence motion, the movant must plead and prove that there is no evidence of one or more of the essential elements of the adverse party's claim or defense. A no-evidence motion for summary judgment shifts the burden to the non-movant to present summary-judgment evidence raising a genuine fact issue. *See Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 432 (Tex.App.-Houston [14th Dist.] 1999, no pet.). We must determine, in a light most favorable to the non-movant, whether the evidence establishes a question of material fact entitling the non-movant to a trial after the non-movant has set forth evidence. *See Gen. Mills*, 12 S.W.3d at 832–33. The non-movant is entitled to a trial if more than a scintilla of evidence is presented that raises a genuine issue of material fact. *See id.* at 833. More than a scintilla of evidence is present when the evidence reaches a level that "enable[s] reasonable and fair-minded people to differ in their conclusions." *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997).

The Ridgways contend that the trial court erred in granting Ford's motion for summary judgment. The trial court did not elaborate as to which form of summary judgment it granted. Therefore, we must keep in mind the levels of evidence needed to defeat both traditional and no-evidence summary judgments. If we find that the trial court erred in granting the motion for summary judgment, we must remand the case to the trial court for further proceedings. *See id.*

CIRCUMSTANTIAL EVIDENCE

Ford correctly states in its brief that the case hinges upon whether the Ridgways provided sufficient circumstantial evidence to avoid summary judgment. Ford claims that the proffered circumstantial evidence fails because the evidence does not show any defect in the truck when it left Ford's control and the evidence is so weak that it is insufficient to prove any defect. Ford also claims that summary judgment is proper because the Ridgways cannot produce evidence of a safer alternative design.

■ In a circumstantial evidence case, the plaintiff must present sufficient evidence so that a fact issue may be inferred. *See Summers v. Fort Crockett Hotel Ltd.*, 902 S.W.2d 20, 26 (Tex.App.-Houston [1st Dist.] 1995, writ denied). Ford asserts that the Ridgways attempted to rely solely

on the fact that a fire occurred. The mere fact that an accident occurred does not lend sufficient proof that the truck was defective. *See Hernandez v. Nissan Motor Corp.*, 740 S.W.2d 894, 895 (Tex.App.-El Paso 1987, writ denied). However, Ford's assertion that the Ridgways relied solely on the fact that a fire occurred is not in line with the actual summary judgment evidence presented. Mr. Ridgway testified as an eyewitness and his testimony was substantiated by an expert witness who had inspected the vehicle.

Our duty in this appeal is to narrowly focus upon whether the Ridgways surpassed the level of necessary evidence to defeat summary judgment. In a no-evidence analysis, we must seek to discover whether Mr. Ridgway's first-hand account of the accident and an expert's affidavit provide more than a scintilla of evidence creating a question of material fact, which consequently, entitles the Ridgways to a trial on the merits. *See* TEX.R. CIV. P. 166a(i). In a traditional analysis, we must let the trial court's determination stand only if there is no genuine issue of material fact. *See Valores*, 945 S.W.2d at 162.

■■ The Ridgways' two claims rest upon alleged manufacturing defects. A manufacturing defect exists when a product does not conform to the design standards and blueprints of the manufacturer and the flaw makes the product more dangerous and therefore unfit for its intended or foreseeable uses. *USX Corp. v. Salinas*, 818 S.W.2d 473, 483 n. 8 (Tex.App.-San Antonio 1991, writ denied); *Ford Motor Company v. Pool*, 688 S.W.2d 879, 881 (Tex.App.-Texarkana 1985), *aff'd in part on other grounds, rev'd in part on other grounds*, 715 S.W.2d 629 (Tex.1986). The manufacturing defect theory is based upon a consumer expectancy that a mass-produced product will not differ from its counterparts in a manner which makes it more

dangerous than the others. *USX Corp.*, 818 S.W.2d at 477 n. 2; *Pool*, 688 S.W.2d at 881.

■■ To establish a manufacturing defect, a plaintiff must demonstrate the finished product deviates either in construction or quality from the specifications or planned output in a way that renders it unreasonably dangerous. *See Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 434 (Tex.1997). If a plaintiff has no direct evidence of a specific manufacturing defect, he may offer evidence of the product's malfunction as circumstantial proof of the defect. *Ford Motor Co. v. Gonzalez*, 9 S.W.3d 195, 199 (Tex.App.-San Antonio 1999, no pet.). An alleged malfunction, in turn, may be established by testimony from the product's user about the circumstances surrounding the event in question. *See Sipes v. Gen. Motors Corp.*, 946 S.W.2d 143, 155 (Tex.App.-Texarkana 1997, writ denied). Expert testimony is not necessarily required to establish a manufacturing defect. *See id.* at 156.

■ Mr. Ridgway testified that he saw flames originally in his rear-view mirror, curling around the cab. He did not see smoke or fire in the cab until immediately before his evacuation. Eyewitness testimony alone has been held sufficient to raise a fact issue. In *Sipes v. Gen. Motors*, the court of appeals held that expert testimony was not needed to raise a fact issue regarding a manufacturing defect of an undeployed airbag. 946 S.W.2d at 156 (noting that fact issue was supported by evidence that an airbag did not deploy and that Sipes was injured due to the airbag's failure). Applying a similar analysis here, a material fact issue may be found on Ridgway's testimony alone.

The Ridgways, however, ventured a step further than *Sipes* and substantiated Ridgway's account with expert testimony. The

Ridgways' expert, Bill Greenless, stated in his affidavit that he observed a "hot spot" in the engine compartment and concluded that based upon his investigation to date, it was most likely the result of an electrical system malfunction. A general, conclusory statement by an expert will not hold sufficient evidentiary weight. *See id.* at 154. However, Greenless's affidavit is not conclusory because it is supported by his study of a Ford F–150 exemplar, an inspection of the actual damaged truck, testimony from Mr. Ridgway, review of Ford service manuals, and review of the National Highway Traffic Safety Administration's Database. Viewed in a light most favorable to the Ridgways, Greenless's affidavit provides some evidence to support Ridgway's personal account and create a question of material fact. In addition, there is some evidence that prior owners had not performed repairs or modifications that damaged the engine after it left the factory.

Appellee argues that this circumstantial proof is insufficient to withstand its motion for summary judgment because appellants failed to absolutely negate the possibility that an intermediate act or agency produced the defective condition. Appellee's reliance on *Ford Motor Company v. Tidwell* for this point is misplaced. *Tidwell* was not a summary judgment proceeding, but rather an appeal following a jury trial where Ford raised insufficient evidence points. *See Ford Motor Co. v. Tidwell*, 563 S.W.2d 831, 835 (Tex.Civ.App.-El Paso 1978, writ ref'd n.r.e.). Moreover *Tidwell* and another auto fire case, *Kriedler*, involve breach of warranty claims, not product liability claims. *See id.; Kriedler v. Pontiac Div. of Gen. Motors Corp.*, 514 S.W.2d 174, 176 (Tex.Civ.App.-Texarkana 1974, writ ref'd n.r.e.). Likewise, *Bass v. General Motors Corporation,* although an appeal of a directed verdict, concerns whether the plaintiff was entitled to sub-mit his defect claims under a *res ipsa loquitor* theory. *Bass v. Gen. Motors Corp.*, 447 S.W.2d 443, 444 (Tex.Civ.App.-Fort Worth 1968, writ ref'd n.r.e.)(to apply *res ipsa loquitor* theory, plaintiff required to prove defect existed, defect required repair, dealer failed to repair it, and defect caused fire). The standard of review guides us to resolve all inferences and doubts in favor of the Ridgways at this stage in the proceedings. Based upon the production of Ridgway's summary judgment proof, there is more than a scintilla of evidence creating a genuine issue of material fact.

### SAFER ALTERNATIVE DESIGN

Ford asserts that failure to provide a safer alternative design is "fatal" to the Ridgway's claims, and summary judgment should be granted as a matter of law. We will determine whether a safer alternative design is necessary for the Ridgways' negligence and products liability claims.

### A. Products Liability Claim

■ A safer alternative design is necessary to prove design defect claims. *See Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 384 (Tex.1995); TEX. CIV. PRAC. & REM. CODE ANN. § 82.005(a)(1) (Vernon 1997) (mandating that a design-defect claim must include a safer alternative design). However, the Ridgways' final claim does not allege design defects, rather they allege a manufacturing defect based upon products liability.

■ A manufacturing defect may be distinguished from a design defect. A manufacturing defect occurs when the product varies from the manufacturer-established design standards, causing that product to deviate from the normal safety of other products of its kind. *See Am. Tobacco,* 951 S.W.2d at 434 (citing *Ford Motor Co. v. Pool,* 688 S.W.2d 879, 881

(Tex.App.-Texarkana 1985), *aff'd in part and rev'd in part on other grounds,* 715 S.W.2d 629 (Tex.1986)). A design defect occurs when the product's design itself renders the product line unsafe. *See Acord v. Gen. Motors Corp.,* 669 S.W.2d 111, 115 (Tex.1984). The Ridgways assert that the particular truck in question malfunctioned, resulting in a devastating fire. The allegation concerns a manufacturing defect for which the Ridgways are not required to set forth a safer alternative design. Therefore, the summary judgment on the strict products liability claim regarding a manufacturing defect was improper.

### B. Negligence Claim

 "Negligence looks at the acts of the manufacturer and determines if it exercised ordinary care in design and production." *See Gonzales v. Caterpillar Tractor Co.,* 571 S.W.2d 867, 871 (Tex. 1978). Negligent manufacturing claims must be accompanied by a safer alternative design. *See Amer. Tobacco Inc. v. Grinnell,* 951 S.W.2d 420, 437 (Tex.1997); *Caterpillar, Inc. v. Shears,* 911 S.W.2d 379, 384 (Tex.1995). If the plaintiff does not set forth a safer alternative design in a negligent manufacturing claim, the claim fails as a matter of law. *See Am. Tobacco,* 951 S.W.2d at 437. The Ridgways did not provide a safer alternative design for the truck. Failure to do so destroys their negligent manufacturing claim as a matter of law. Accordingly, summary judgment regarding the negligence claim was properly granted.

### CONCLUSION

The affidavits by Ridgway and Greenless collectively create a material fact issue and provide more than a scintilla of evidence in support of the strict products liability claim based upon a manufacturing defect. Upon consideration of the evidence viewed in a light most favorable to the non-movants, we affirm the trial court's judgment in part and reverse and remand the remainder of the case to the trial court for further proceedings.

KAREN ANGELINI, Justice, dissenting.

I respectfully dissent. Under the summary judgment evidence before the trial court, there is no evidence of a manufacturing defect. Thus, summary judgment was properly granted.

Jack Ridgway was driving his Ford F-150 pickup truck when it caught fire, causing him to sustain personal injuries. He filed suit against the Ford Motor Company alleging a manufacturing defect under theories of product liability and negligence. Ford filed a motion for summary judgment under both the no-evidence and traditional summary judgment standards, claiming there was no evidence of and no material fact issue as to a product defect. Ford's summary judgment evidence consisted of portions of Ridgway's deposition.

Ridgway responded to the summary judgment motion and presented evidence consisting of his own affidavit, affidavits of two previous owners of the vehicle, an affidavit of an expert witness, and the vehicle's title history. Ridgway's summary judgment evidence showed as follows: he was driving the vehicle when he noticed flames in his rear view mirror curling up around the cab; the only modification to the vehicle was when a spotlight was installed for the first owner; all repairs were performed by an authorized Ford dealer; the vehicle had never been involved in a wreck; and Ridgway was not smoking a cigarette when the fire began.

The affidavit of Ridgway's expert, Bill Greenless, states that Greenless investigated the fire to determine, if possible, the

cause and origin. Greenless states that he performed a visual inspection of the vehicle and found significant fire and heat damage in the engine compartment, the passenger compartment, and the truck bed. He also found evidence of a hot spot in the engine compartment. Greenless testified that, in his opinion, the fire originated in the engine compartment and that "[a] malfunction of the electrical system in the engine compartment is suspected of having caused this incident." Further, he stated that he could not eliminate a portion of the fuel system as a cause and that "[t]he actual cause of the fire has not been determine [sic] yet."

As the majority recognizes, the Ridgways' claims rest upon alleged manufacturing defects. And, in order to prove a manufacturing defect, the Ridgways were required to show that the finished product deviated in construction or quality from the specifications or planned output in a way that rendered it unreasonably dangerous. Relying upon *Ford Motor Co. v. Gonzalez*, 9 S.W.3d 195 (Tex.App.-San Antonio 1999, no pet.), the majority states that, absent evidence of a specific manufacturing defect, the Ridgways could offer evidence of the product's malfunction as circumstantial proof of the defect. In *Gonzalez*, the plaintiff claimed his injuries were caused by a manufacturing defect in his car consisting of a misalignment in the suspension system, which caused damage to the ball joint from the moment the car left the factory until the day of the accident. *Id.* at 199–200. In holding that there was sufficient evidence to support the jury's verdict in favor of the plaintiff, this court relied, in substantial part, on *Sipes v. General Motors Corp.*, 946 S.W.2d 143 (Tex.App.-Texarkana 1997, writ denied), which involved injuries caused by the failure of an airbag to deploy. *See Gonzalez*, 9 S.W.3d at 199. The *Sipes* court recognized the general rule that the

mere fact an accident occurred is not proof that an automobile was defective, but held that "when a specific mechanism does not function as it is designed, it is under seal, and there is no evidence suggesting that anyone has tampered with it since it left the manufacturer, that is circumstantial proof of a defect." *Sipes*, 946 S.W.2d at 155.

The summary judgment evidence in the case before us is distinguishable from that presented in *Gonzalez* and *Sipes*. In this case, the Ridgways have failed to identify any specific mechanism that did not function as it was designed. Although it is true, as the majority states, that eyewitness testimony alone may be sufficient to raise a fact issue, the eyewitness testimony here shows nothing more than the occurrence of a fire in the truck as Ridgway was driving it. It does not amount to circumstantial evidence of a manufacturing defect.

Further, Greenless' expert testimony offers no evidence of a manufacturing defect, circumstantial or otherwise. Although the majority states that, in his affidavit, Greenless concluded that "[the fire] was most likely the result of an electrical system malfunction," a careful reading of Greenless' affidavit reveals that he only *suspected* that an electrical system malfunction caused the fire, that he could *not* eliminate at least one other cause, and that he had *not* determined the actual cause. These statements are nothing more than mere speculation and are not evidence of a manufacturing defect.

In conclusion, there is simply no evidence the truck deviated from the specifications or planned output in a way that rendered it unreasonably dangerous. Because there was no evidence of a manufacturing defect, the trial court did not err in

granting summary judgment. I would affirm the judgment of the trial court.